E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JENNIFER CHOU (Cal. Bar No. 238142)
Assistant United States Attorney
Violent & Organized Crime Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6482
    Facsimile: (213) 894-3713
    E-mail:    jennifer.chou@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR Nos. 99-270-CAS-6 |
| | 22-452-CAS |
| Plaintiff, | |
| | GOVERNMENT'S SENTENCING POSITION |
| v. | FOR DEFENDANT MOUSTAFA HASSAN |
| | CHAHIN; EXHIBITS FILED |
| MOUSTAFA HASSAN CHAHIN, | SEPARATELY UNDER SEAL |
| Defendant. | Hearing Date: 2-6-2023 |
| | Hearing Time: 2:30 P.M. |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Jennifer Chou and Kim Meyer, hereby files its sentencing position as to defendant Moustafa Hassan Chahin.

//

//

//

This sentencing position is based upon the attached memorandum of points and authorities, the exhibits filed separately under seal, the files and records in these cases, and such further evidence and argument as the Court may permit.

Dated: January 25, 2023

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

    /s/
JENNIFER CHOU
KIM MEYER
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**I.      INTRODUCTION AND BACKGROUND OF CASES**

On November 5, 1999, defendant Moustafa Hassan Chahin ("defendant"), pleaded guilty pursuant to a sealed cooperation[1] plea agreement to count one of the indictment in United States v. Adel Dardoon, et al., CR 99-270-CAS-6 (the "bank fraud case"), which charged him with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 371.  A copy of the bank fraud plea agreement is filed under seal at Exhibit A.

Sentencing in the bank fraud case was set for February 28, 2000.  The case was at that time assigned to the Honorable J. Spencer Letts, United States District Judge, who allowed defendant to travel to Egypt for a few weeks in November and December.  Rather than returning as ordered, defendant remained in Egypt for 20 years.

On January 18, 2000, Judge Letts issued a bench warrant for defendant.  On April 16, 2002, the government filed a complaint alleging failure to appear in violation of 18 U.S.C. § 3146.

Nearly 20 years later, defendant surrendered himself to the United States Embassy in Egypt and returned to the United States on October 5, 2021, where he was arrested and taken into federal custody.

On October 20, 2022, defendant pleaded guilty to a one-count information charging defendant with failure to appear in violation

---

[1] Defendant breached the bank fraud plea agreement when he absconded and failed to appear; the government is not bound to the terms of the bank fraud plea agreement.

of 18 U.S.C. §§ 3146(a)(1), (b)(A)(ii), 3147(1), in <u>United States v. Moustafa Hassan Chahin</u>, CR 22-452-CAS (the "FTA case").[2]

Although a presentence report ("PSR") was prepared and disclosed for the bank fraud case (the "bank fraud PSR"[3]), a new PSR that covers both the bank fraud and FTA cases was prepared and disclosed to the parties on January 3, 2023 (the "new PSR"). The government agrees that the applicable United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") for the bank fraud conduct is the Nov. 1, 1998 edition.[4]

The stipulated calculations set forth at paragraph 12 of the plea agreement differ from the calculations in the new PSR in a few ways. First, the new PSR applied Application Note 3 to U.S.S.G. § 2J1.6 to group the failure to appear count together with the bank fraud count, rather than treating the two offenses as separate groups that result in a grouping adjustment as appears in the plea agreement. <u>See</u> PSR ¶ 31. Instead, the Guidelines account for the failure to appear offense conduct in the 2-level increase for obstruction of justice pursuant to U.S.S.G. § 3C1.1. <u>See</u> U.S.S.G. § 2J1.6 n. 3.

---

[2] The government has dismissed the 2002 complaint without prejudice.

[3] A copy of the bank fraud PSR is filed under seal at Exhibit B.

[4] U.S.S.G. § 2F1.1 was deleted by consolidation with § 2B1.1 effective November 1, 2001. However, because the guideline calculations under U.S.S.G. § 2B1.1 present an <u>ex post facto</u> problem, the parties agree that the guidelines in effect from 1999 used in defendant's plea agreement for the bank fraud case will be used for the bank fraud "group" as part of the guidelines calculations for this case. <u>See</u> PSR ¶ 5(b); Plea Agreement ¶ 12.

2

Both the bank fraud PSR and the new PSR calculated a total loss amount of $421,168.24, which results in the application of a 9-level increase under U.S.S.G. §2F1.1(B)(1)(J). New PSR ¶¶ 19, 35; bank fraud PSR ¶¶ 26-30, 102. Accordingly, the new PSR sets forth the following Guidelines:

| | | | |
|---|---|---|---|
| Base Offense Level | : | 6 | [U.S.S.G. § 2F1.1] |
| Loss Amount More Than $400,000 | : | +9 | [U.S.S.G. § 2F1.1(b)(1)(J)] |
| Multiple Victims | : | +2 | [U.S.S.G. § 2F1.1(b)(2)] |
| Obstruction of Justice | : | +2 | [U.S.S.G. § 3C1.1] |
| Early Acceptance of Responsibility | : | -3 | [U.S.S.G. § 3E1.1] |
| Total Offense Level | : | 16 | |

New PSR ¶¶ 34-46.

The government also concurs with the new PSR's determination that defendant has a criminal history category of I, which results in an applicable Guidelines range of 21-27 months.

For the reasons set forth below, the government concurs with the Probation Officer's recommendation that the Court impose a total term of imprisonment of 24 months, followed by a three-year term of supervised release with the terms and conditions recommended in the Probation Office's Letter to the Court, dated December 27, 2022 (the "new PSR Letter"), mandatory restitution in the amount of $421,168.24 to be paid to the identified victims, and a special assessment of $200. The government defers to the PSR's determination that defendant does not have the ability to pay a fine and does not object to a waiver of the fine. PSR ¶¶ 87-91.

3

**II.     VICTIM IMPACT AND RESTITUTION**

Defendant's offense conduct resulted in losses to the victim bank and credit card companies in the amount of $421,168.24. The new PSR sets forth the specific losses sustained by each of the 17 identified victims. New PSR ¶ 107; see also new PSR Letter at 1-2. The bank fraud PSR included the contact information for each victim as it existed in 1999. Bank fraud PSR ¶ 102. Restitution is mandatory under 18 U.S.C. § 3663A. Two issues arise with restitution given the 20-year delay in judgment in the bank fraud case.

First, as the new PSR notes, many of the victim companies no longer exist, either because they were purchased by other companies or are otherwise no longer in operation. New PSR ¶ 23. Although the Probation Officer who prepared the new PSR did not receive additional victim impact statements, see id., the bank fraud PSR noted that it had received victim declarations setting forth their loss amounts, see bank fraud PSR ¶ 103.[5] However, those declarations no longer appear to be accessible due to the 20-year delay. The government notes, however, that the parties stipulated in the factual basis of the bank fraud plea agreement that all of the victim companies were insured by the Federal Deposit Insurance Corporation, or "FDIC," as necessary for the underlying bank fraud charges. See Ex. A at 18. Accordingly, the government is in the process of checking whether the FDIC had paid the victims for their

---

[5] The government has not yet located any victim impact statements submitted in 1999 or 2000, and it has not received any new impact statements because all but one of the victims no longer exist.

4

losses, which would mean that the restitution could be paid to the FDIC instead.  However, it is unlikely that the government can obtain confirmation from the FDIC as to all 17 victims by the current date of sentencing.  If the government confirms after sentencing that the FDIC is the appropriate recipient of the mandatory restitution, then the parties can seek to modify the restitution order accordingly.  At this time, the only victim that still exists in its 1999 form is Wells Fargo Bank.  The Court could order that defendant pay restitution owed to Wells Fargo first, which is $6,950.  At $200 per month, it will take some time for defendant to satisfy that order just as to Wells Fargo, which should be enough time for the government to verify whether other restitution payments should be made to the FDIC.

Second, after defendant pleaded guilty in the bank fraud case, the Probation Officer recommended to the Court that interest on the restitution be waived because of defendant's inability to pay more than the amount of restitution identified in the PSR.  See Letter, dated February 28, 2000 (the "Bank Fraud PSR Letter") at 3 (filed separately under seal as Exhibit C).  Interest is to be paid on fines and restitution unless the Court waives or limits such interest due to a defendant's inability to pay.  See 18 U.S.C. § 3612(f)(3).  Here, the new PSR and the new PSR Letter are silent as to whether it recommends that defendant pay interest on the restitution amount, although the Probation Officer has determined that defendant does not have the ability to make more than nominal payments toward restitution in the amount of $200 per month or 10% of his gross income, whichever is greater.  See new PSR ¶¶ 90, 93; new PSR Letter at 2.

5

1    Defendant's inability to pay notwithstanding, it is important
2 to note how defendant's flight from justice has prejudiced the
3 victims.  According to the Bureau of Labor Statistics, given
4 inflation over the last 22 years, $421,168.24 in 2000 is the
5 equivalent of $773,523.95 today.  See CPI Inflation Calculator,
6 available at https://data.bls.gov/cgi-
7 bin/cpicalc.pl?cost1=421%2C168.24&year1=199801&year2=202212 (last
8 accessed on Jan. 25, 2023).  Put another way, paying the victims
9 $421,168.24 today amounts to paying them only $239,534.76 of their
10 losses in 2000.  The value of the dollar has almost doubled in the
11 time that defendant was evading justice, which means the victims
12 will be recovering barely half of what they lost.

**III. GUIDELINES**

14    As discussed above, the government concurs with the new PSR's
15 Guidelines calculation.  The government objects to defendant's
16 request that the Court apply a two-level reduction for a minor role.
17 As defendant admitted himself in the bank fraud plea agreement's
18 factual basis, he engaged in numerous aspects of the fraud with
19 several co-conspirators.  Ex. A at 18.  As detailed in the bank
20 fraud PSR, defendant engaged in no fewer than 160 fraudulent
21 transactions between August 1996 and July 1997, and he posted at
22 least 64 insufficient checks during that period to "boost" his
23 credit limit in furtherance of the fraud.  Bank fraud PSR ¶ 26.  He
24 used credit cards in his name and in his wife's name, and he
25 admitted to engaging in the scheme as late as 1998.  Id. ¶¶ 35, 41.
26 The government concurs in both PSRs' assessment that he did not play
27 a minor role in the scheme that would warrant a departure under USSG
28 § 3B1.2.  See bank fraud PSR ¶ 41; new PSR ¶ 39.

6

## IV. ANALYSIS OF THE SECTION 3553(A) FACTORS

The government submits that the factors set forth at 18 U.S.C. § 3553(a) would be fulfilled by a sentence of 24 months, which is within the applicable Guidelines sentencing range and the sentence recommended by the Probation Office. The § 3553(a) factors justify the 24-month sentence.

### A.  18 U.S.C. § 3553(a)(1)

Section 3553(a)(1) requires the Court to consider the nature and circumstances of the offense and the history and characteristics of defendant. Here, defendant engaged in a serious and far-reaching fraud, in which his conduct resulted in losses at least 17 victims. His lack of criminal history is reflected in the Guidelines range, and the mid-range sentence is warranted given the nature and circumstances of his 20-year flight from justice and the prejudice to the victims caused by that delay.

### B.  18 U.S.C. § 3553(a)(2)

Section 3553(a)(2) requires the Court to consider the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of defendant, and to provide defendant with any needed training and treatment. These factors also support a sentence of at 24 months imprisonment. Defendant has not served longer than 90 days in custody for his previous offenses, so a 24-month sentence is sufficiently lengthy to deter defendant from committing future crimes. At the same time, a significant sentence is necessary to provide just punishment for the fact that he willfully evaded sentencing and incarceration for more than two

decades. This sentence may serve as a deterrent to similarly-situated potential offenders, particularly those without prior criminal convictions who contemplate absconding from justice.

### C. 18 U.S.C. § 3553(a)(6)

18 U.S.C. § 3553(a)(6) requires the Court to minimize sentencing disparity among similarly situated defendants. Using the Sentencing Guidelines to sentence defendant accomplishes this goal. Similarly-situated defendants with the same criminal history would likely receive a sentence within the same range. See United States v. Saeteurn, 504 F.3d 1175, 1181 (9th Cir. 2007) ("Our sister circuits generally agree that 'Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case.'") (citations omitted). Here, the recommended sentence falls within the applicable Guidelines. A similarly-situated defendant would be subject to the same sentencing range.

### D. THE REMAINING 3553(a) FACTORS ALSO SUPPORT THE SENTENCE REQUESTED BY THE GOVERNMENT

18 U.S.C. § 3553(a)(3) requires the Court to consider the kinds of sentences available. A 24-month period of imprisonment, followed by a 3-year period of supervised release, is a fair sentence, given the scope of potential harm of defendant's offense, and provides punishment that is sufficient but not greater than necessary to address the offense. A three-year term of supervised release, rather than the two-year term recommended by the Probation Officer, is justified by defendant's flight and demonstrated untrustworthiness under supervision.

8

18 U.S.C. § 3553(a)(4) & (5) now merely require the Court to take the sentencing Guidelines as "advisory."

## V.  IMPOSITION OF SENTENCE

Application Note 3 to USSG § 2J1.6 sets forth the way in which the Court should impose sentences for the bank fraud offense and the failure to appear offense, as the sentence for the failure to appear conviction under 18 U.S.C. §§ 3146(a)(1), (b)(1)(A)(ii), as enhanced by 18 U.S.C. § 3147(1), must run consecutive to the underlying bank fraud sentence. Accordingly, should the Court determine that a "total punishment" of 24 months is appropriate, the Court can impose a 21-month sentence for the bank fraud conviction and a consecutive 3-month sentence for the failure to appear conviction.

## VI.  CONCLUSION

For all the foregoing reasons, the factors set forth in 18 U.S.C. § 3553(a) support the imposition of a sentence of 24 months imprisonment, followed by a 3-year period of supervised release, mandatory restitution in the amount of $421,168.24 with the payment schedule recommended by the Probation Office, and a special assessment of $200.